**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| T.G. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-0033-CVE-PJC |
| | ) | |
| REMINGTON ARMS COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: Defendant's Motion to Control the Order of Proof and Exclude *in Limine* General Evidentiary Matters, and Brief in Support (Dkt. # 63); Plaintiffs' Motion in Limine (Dkt. # 64); Defendant's Motion *in Limine* to Exclude Non-Causally Related Defects and Conditions and Other Inadmissible Matters (Dkt. # 65); and Defendant's Motion *in Limine* to Exclude Evidence of Other Occurrences, Lawsuits, Settlements, and Verdicts, and Brief in Support (Dkt. # 66).

**I.**

On December 1, 2010, S.H. took his father's Remington Model 700 rifle to hunt deer near his home in Fairland, Oklahoma, and three of his friends, T.G., K.G., and C.M., accompanied him. Dkt. # 37-3, at 14. When they were returning home, they were required to pass through two barbed-wire fences. It is unclear who was carrying the rifle at various points during the return trip due to conflicting statements from S.H. and C.M., but there is no dispute that T.G. and K.G. were not handling the rifle. Dkt. # 37-3, at 18-19; Dkt. # 37-4, at 2. C.M. and S.H. also disagree about who was responsible for unloading the rifle before they crossed the barbed wire fences, and each believed that the other had unloaded the rifle. Dkt. # 37-3, at 18; Dkt. # 37-4, at 3. Regardless of who was

responsible to unload the rifle, there was a cartridge in the chamber of the rifle as the boys were headed home. They crossed the first barbed-wire fence without incident. Dkt. # 37-3, at 17. When they reached the second fence, S.H. claims that he went through the fence first and C.M. handed the rifle over the barbed-wire. Id. at 19. C.M. recalls that he went through the fence first and that S.H. was attempting to pass the rifle over the barbed-wire. Dkt. # 37-4, at 3. Regardless of whether S.H. or C.M. was passing the rifle over the fence, the rifle discharged the cartridge in the chamber, and the cartridge went through T.G.'s left hand and struck K.G. in the abdomen. Id. at 27. S.H. and C.M. denied that they pulled the trigger when the shot was fired and they claim that the rifle discharged without a trigger pull.

On March 25, 2011, plaintiffs T.G. and K.G. filed this case in Ottawa County District Court alleging claims of manufacturer's products liability and negligence against Remington. Dkt. # 2-1, at 2-9. The case was removed to this court on the basis of diversity jurisdiction. Plaintiffs allege that the Model 700 rifle contains an inherent defect from the use of the "Walker" fire control system, and they retained Powell to offer an expert opinion as to the existence of a product defect and causation of plaintiffs' injuries. Powell has drafted an expert report stating that the use of a Trigger Connector is an inherent design defect in the Remington Model 700 rifle, and he opines that this defect caused plaintiffs' injuries. Powell identified no other possible product defect in his expert report. Defendant filed a motion to exclude Powell's testimony (Dkt. # 37) and plaintiffs' filed a motion for partial summary judgment (Dkt. # 40). The Court entered an opinion and order (Dkt. # 90) denying plaintiffs' motion for partial summary judgment and finding that Powell would be permitted to testify at trial subject to certain limitations. The case is set for trial on July 28, 2014.

**II.**

The parties have filed motions in limine seeking a pretrial ruling on certain evidentiary matters. "'A motion *in limine* is a request for guidance by the court regarding an evidentiary question,'" which the court may provide at its discretion to aid the parties in formulating trial strategy." Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995) (quoting United States v. Luce, 713 F.2d 1236, 1239 (6th Cir. 1983)). The Court's ruling on a motion in limine is preliminary and "the district court may change its ruling at any time for whatever reason it deems appropriate." Id.

**A. Plaintiffs' Motion in Limine (Dkt. # 64)**

Plaintiffs seek to exclude evidence of prior criminal or bad acts committed by S.H. and C.M. and evidence of the parties' settlement negotiations. Dkt. # 64. Plaintiffs also ask the Court to find that they are blameless or "fault free" plaintiffs, and they seek to prevent defendant from attempting to argue that plaintiffs' damages should be reduced due to contributory negligence. Defendant objects to plaintiffs' request to exclude evidence of S.H.'s prior bad acts. Dkt. # 78, at 2. Defendant does not oppose plaintiffs' request to exclude evidence of settlement negotiations, and that aspect of plaintiffs' motion is granted. The Court has previously ruled that there is a genuine dispute as to whether plaintiffs are blameless or "fault free," and plaintiffs' request to preclude defendant from raising the issue of contributory negligence is denied for the reasons stated in the Court's prior opinion and order. Dkt. # 90, at 17 n.4.

Plaintiffs ask the Court to exclude evidence of S.H. and C.M.'s "trouble with law enforcement for breaking and entering a lumber yard" and evidence that S.H. "had been in trouble with law enforcement for making a homemade Works bomb and placing it in a mailbox." Dkt. # 64, at 2. Defendant responds that it does not intend to introduce evidence of S.H.'s or C.M.'s

3

breaking into a lumber yard unless plaintiffs "somehow make that evidence relevant." Dkt. # 78, at 2. However, defendant argues that S.H. placed a Works bomb in a police officer's mailbox and this casts doubt on the credibility of statements made by S.H. to the police after the shooting.

The parties have not submitted any documents showing if S.H. was convicted as a result of his conduct and, even if he were convicted of an offense, evidence of a juvenile adjudication may be used to impeach a witness in a criminal case only. Fed. R. Evid. 609(d). Defendant argues that S.H.'s conduct shows a lack of respect for police officers in general, and evidence of his bad act of placing a Works bomb tends to show that S.H. may not have been truthful when he spoke to a police officer after the shooting. Under Fed. R. Evid. 404(b), "[e]vidence of a crime, wrong, or other act may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Defendant has identified a potentially legitimate use for evidence of S.H.'s prior bad act, but defendant has not shown the conduct significantly relates to the credibility of S.H.'s statements to police after the shooting. At this point, the arguments raised by the parties suggest that it could be irrelevant and/or unfairly prejudicial to allow defendant to use evidence of S.H.'s prior bad act of placing a Works bomb in a mailbox. The Court will preliminarily grant plaintiffs' request to exclude evidence of C.M.'s and S.H.'s prior bad acts, but plaintiffs are advised that the evidence of S.H.'s placement of a Works bomb in a police officer's mailbox could become relevant if plaintiffs open the door to such evidence.

**B. Defendant's Motion *in Limine* to Exclude Evidence of Other Occurrences, Lawsuits, Settlements, and Verdicts and Brief in Support (Dkt. # 66)**

Evidence of Other Similar Incidents

Defendant asks the Court to exclude all "evidence of other occurrences, lawsuits, settlements, and verdicts involving other Remington bolt-action rifles." Dkt. # 66, at 24. Plaintiffs respond that they should be permitted to use evidence of other similar incidents involving the alleged accidental discharge of a Remington rifle if the incident "has the same core facts as the incident in this matter." Dkt. # 75, at 7.

Admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case.'" Ponder v. Warren Tool Corp., 834 F.2d 1553, 1560 (10th Cir. 1987) (quoting Karns v. Emerson Elec. Co., 817 F.2d 1452, 1460 (10th Cir. 1987)). "Substantial similarity depends on the underlying theory of the case." Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.3d 1434, 1440 (10th Cir. 1992). "Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar." Ponder, 834 F.2d at 1560. While a party may lay a foundation for this evidence in the presence of the jury, the court should rule on the admissibility of this evidence outside the presence of the jury. Wheeler v. John Deere Co., 862 F.2d 1404, 1407 (10th Cir. 1988). The party seeking to use evidence of other similar incidents has the burden to prove the admissibility of the evidence. Black v. M & W Gear Co., 269 F.3d 1220, 1227 (10th Cir. 2001); Wheeler, 862 F.2d at 1407.

The parties have not provided sufficient evidence for the Court to conclusively rule on the admissibility of other similar incidents, because neither party has provided the Court with evidence identifying the other incidents that might be used by plaintiffs at trial. However, the Court will offer

some guidance to plaintiffs on the type of evidence concerning other similar incidents that could be admissible at trial. Plaintiffs seem to be arguing that an incident is substantially similar if the incident involved the accidental discharge of any Model 700 or Model 710 rifle allegedly without a trigger pull. Dkt. # 75, at 6-7. This standard is too broad and there is too great a risk that defendant will be unfairly prejudiced by the admission of incidents that are not substantially similar. There is also a strong likelihood that the Court will effectively be required to have a mini-trial each time plaintiff attempts to admit such evidence. The Court finds that any evidence of other similar incidents should be limited to the same model of rifle, the Model 700, that was involved in the discharge in this case. Plaintiffs must show that the rifle discharged under circumstances that are substantially similar to the accident in this case -- i.e., that the safety was in the "FIRE" position and that there is a substantial likelihood that the rifle fired without a trigger pull. The incident also must have been caused by the same product defect alleged by plaintiff. If plaintiffs do not have sufficient evidence to establish that such incident is substantially similar to the shooting in this case, the evidence concerning such incident will not be admissible because there is no way for the Court to determine if the incident is substantially similar. Defendant's request to exclude evidence of other similar incidents is preliminarily denied due to the lack of a sufficient record for the Court to conclusively rule on this issue, but defendant may object to admissibility of this type of evidence at trial.

<u>Customer Complaints</u>

Defendant asks the Court to exclude evidence of customer complaints, because the complaints are hearsay and plaintiffs have not shown that the complaints involve incidents that are substantially similar to this case. Dkt. # 66, at 14-15. Plaintiffs responds that customer complaints

6

are admissible under the business records exception to the hearsay rule, and the complaints are relevant to establish that defendant had notice of an alleged defect. Dkt. # 75, at 9.

Customer complaints would be inadmissible if offered to prove the truth of the complaint, but such complaints can be admissible if offered to prove a defendant's notice of a product defect. Ahlberg v. Chrysler Corp., 481 F.3d 630, 637 n.3 (8th Cir. 2007); Arrington v. ER Williams, Inc., 2011 WL 6301046, *7 n.3 (E.D. Va. Dec. 16, 2011); Olson v. Ford Motor Co., 410 F. Supp. 2d 855, 863 (D.N.D. 2006). Even if the customer complaints are not excluded as hearsay, the party offering each customer complaint must show that the incident described in the complaint meets the substantially similarity test. Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1108 (8th Cir. 1988); Olson, 410 F. Supp. 2d at 863. The Court declines to conclusively rule on the admissibility of customer complaints at this stage of the case, because the parties have not provided sufficient evidence about the source or the contents of the complaints. However, plaintiffs are advised that customer complaints will be admissible to show notice only if the conditions for admission of other similar incidents are satisfied. In addition, the Court will read a limiting instruction advising the jury that customer complaints are being offered as evidence that defendant had notice of an alleged defect and not as evidence that event described in the complaint actually happened. See Worsham v. A.H. Robins Co., 734 F.2d 676, 686 (11th Cir. 1984).

**C. Defendant's Motion *in Limine* to Exclude Non-Causally Related Defects and Conditions and Other Inadmissible Matters (Dkt. # 65)**

Defendant asks the Court to prevent plaintiffs from eliciting testimony from their expert witness, Powell, about any theory of product defect that was not disclosed in his expert report and that could not be the cause of the accident. Dkt. # 65. Plaintiffs respond that Powell should be

7

permitted to rule out certain possible defects as the cause of the accident, and they ask the Court to deny defendant's motion. Dkt. # 74.

The Federal Rules of Civil Procedure require an expert witness to prepare a report containing a "complete statement of all opinions to be expressed and the basis and reasons for them . . . ." Fed. R. Civ. P. 26(a)(2)(B). A court may exclude specific opinions or bases for the expert's opinions that were not fairly disclosed in the expert's report. Keach v. United States Trust Co., 419 F.3d 626, 641 (7th Cir. 2005). If an party intends to offer an expert opinion that was not clearly stated in the expert's report, the party must provide a timely supplemental disclosure to the opposing party in order to rely on any expert opinions that was not stated in the expert's initial report. Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC, 730 F.3d 67, 76 (1st Cir. 2013); Brainard v. American Skandia Life Assur. Corp., 432 F.3d 655, 664 (6th Cir. 2005).

In this case, Powell opined in his expert report that the sole defect giving rise to the shooting was the use of a Trigger Connector in the Walker fire control system used in the Model 700 rifle. Dkt. # 49-2, at 5. He opines that the Trigger Connector is subject to interference from other components within the fire control system or from "dirt, corrosion deposits, condensation, frozen moisture, lubricant deposits, firing deposits, or manufacturing residue." Id. at 6. Powell noted that the rifle's safety was in "FIRE" position at the time of the shooting. Id. Powell's report does not specifically mention or rule out alternate causes of the shooting, and his report is focused solely on the existence of a design defect.

Ruling Out of Alternate Causes of Shooting

Plaintiffs argue that Powell should be permitted to rule out certain possible defects, because this is a necessary part of his testimony to support his theory that the use of a Trigger Connector in

8

the design of the Walker fire control system caused the rifle to fire without a trigger pull. Defendant claims that Powell should not be permitted to discuss alternate causes of the shooting when there is no evidence suggesting that those causes could have possibly played a role in the incident.[1]

The ruling out of alternate causes is a viable, and sometime necessary, strategy to show that an expert's opinion is based on reliable methodology. Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1234 (10th Cir. 2005); Truck Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1215 (10th Cir. 2004). In fact, defendant argued in its Daubert motion that Powell's testimony should be entirely excluded due to his failure to rule out alternate causes. Dkt. # 37, at 25-28. The Court found that Powell's deposition provided a sufficient basis to show that Powell actually considered alternate causes, even if this was not clear from his expert report. Dkt. # 90, at 9. Plaintiffs will be permitted to examine Powell to rule out alternate causes of the shooting. Based on the arguments raised in defendant's Daubert motion, it also likely that defendant will cross-examine Powell about alternate causes that he allegedly failed to consider or give sufficient weight in his analysis, and both sides should be afforded a level playing field on this issue. See Dkt. # 37, at 26-28. Plaintiffs may ask Powell why adjustment of the trigger mechanism, manufacturing tolerance buildups, buildup of aged or gummed lubricants, or manufacturing defects were ruled out as possible reasons why the rifle could have fired without a trigger pull.[2]

---

[1] The Court has previously ruled that Powell may not testify about the effect of a partial trigger pull because there is no evidence that the trigger was partially pulled before the shooting. Dkt. # 90, at 10.

[2] Plaintiffs are advised that they have been given leeway to question Powell about causes that can be ruled out, but Powell may not offer any new opinion as to the cause of the shooting other than the single theory stated in his expert report.

9

The "Trick" Condition and the "Screwdriver" Test

Defendant states that the Model 700 rifle can be "tricked" into firing under certain conditions, but Powell examined the rifle and found that "trick" test did not cause the subject rifle to fire. Dkt. # 65, at 5. Defendant claims that Powell has criticized the Model 700 rifle in general because some rifles fail the "Screwdriver" test, but he examined the subject rifle and found that it passed the "Screwdriver" Test. Id. at 6. Defendant seeks a ruling precluding Powell from mentioning the "Trick" or "Screwdriver" tests during his testimony at trial. Plaintiffs respond that these tests are possible alternate causes of an accidental firing and plaintiffs should be permitted to question Powell about these tests. Unlike the other alternate causes identified by defendant, Powell specifically tested the rifle and found that it did not fire under the "Trick" or "Screwdriver" tests, and plaintiffs would be offering this testimony only to impugn defendant's product by suggesting that it routinely fires without a trigger pull. Unless defendant opens the door by mentioning the "Trick" or "Screwdriver" tests, plaintiffs are prohibited from questioning Powell or any other witness about these tests.

Recall of Model 600 Rifle

Defendant asks the Court to exclude evidence of Remington's voluntary recall of Model 600 rifles in 1978, because the recall is not relevant to the alleged defect in the Model 700 rifle and Remington would be unfairly prejudiced if plaintiffs were permitted to infer that the recall generally suggests that Remington manufactures defective products. Dkt. # 65, at 7. Plaintiffs respond that the recall of a different rifle shows that Remington had a way to take dangerous products off the

market and protect consumers, and Remington's failure to recall the Model 700 rifle shows that Remington placed profit over the protection of consumers.³ Dkt. # 74, at 7-8.

Evidence of a recall of the same product at issue in a lawsuit is generally inadmissible if the recall occurred after the plaintiff was injured, because this often constitutes evidence of a subsequent remedial measure. Fed. R. Evid. 407; Hughes v. Stryker Corp., 423 F. App'x 878, 880-81 (11th Cir. Apr. 14, 2011); Rutledge v. Harley-Davidson Motor Co., 364 F. App'x 103, 106 (5th Cir. Feb. 3, 2010). In this case, plaintiffs are not attempting to show that the rifle that caused their injuries was recalled but, instead, they intend to offer evidence that a separate model of rifle was recalled by Remington in 1978. At least one court has found that the Model 600 and Model 700 rifles have significant differences, and evidence of the Model 600 recall was inadmissible in a case involving the Model 700 rifle. Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1108-08 (8th Cir. 1988). Plaintiffs have made no attempt to show that the Model 600 recall involved the same alleged defect identified by their expert, and plaintiffs have not shown that Oklahoma law imposes any duty on a manufacturer to recall an allegedly defective product. The arguments raised by plaintiffs also do not show that the recall of the Model 600 rifle has any relevance to this case. It appears that plaintiffs intend to argue that defendant was a bad corporate actor that prioritized financial gain over consumer safety. Plaintiffs have not identified a legitimate use for this evidence, such as notice of a defect in Model 700 rifle. Based on the record before the Court, the Court preliminarily finds that evidence of the Model 600 recall is inadmissible.

---

³ Defendant also seek to exclude evidence that the Model 710 rifle was subject to a limited recall in the early 2000s and that Remington had internal discussions in 1979 and 1994 about a possible recall of the Model 700 rifle. Plaintiffs failed to respond to these arguments, and the Court finds that defendant's request to exclude evidence of the Model 710 recall and internal recall discussions concerning the Model 700 rifle should be granted.

Owner's Manual

     Defendant seeks to prevent plaintiffs from arguing that the owner's manual for the Model 700 rifle is deficient, because the persons handling the rifle at the time of the shooting, C.M. and S.H., admit that they had not read the owner's manual. Dkt. # 65, at 10. S.H. has acknowledged that his father's rifle was involved in the shooting and that he never looked at the owner's manual. Dkt. # 48-3, at 7. Plaintiffs respond that defendant has listed the owner's manual as an exhibit, and they argue they should be able to point out deficiencies in the manual if defendant uses the manual as an exhibit at trial. Dkt. # 74. Plaintiffs read defendant's motion in limine too broadly, and it does not appear that defendant is asking to have manual excluded in its entirety. Instead, defendant seeks to preclude plaintiffs from raising a failure to warn theory based on warnings contained in an owner's manual when there is evidence in the record that the person handling the rifle failed to read the owner's manual. Under Oklahoma law, there is a rebuttable presumption in a manufacturer's products liability case that a plaintiff would have read and heeded an adequate warning. Daniel v. Ben E. Keith Co., 97 F.3d 1329 (10th Cir. 1996). However, this presumption can be rebutted if the defendant comes forward with evidence that an adequate warning would have had no effect on the plaintiff's conduct. Id. at 1332-33. S.H.'s deposition testimony shows that he had access to the owner's manual for the rifle but he made no attempt to read the manual, and the rifle involved in the incident belonged to his father. This rebuts that presumption that any warnings in the owner's manual would have reduced the risk of potential unsafe handling of the rifle or the risk of an accidental discharge, and it shows that any alleged deficiencies in the owner's manual had no bearing on S.H.'s conduct at the time of the shooting. Defendant's motion in limine is granted to

12

the extent that it seeks to preclude plaintiffs from mentioning alleged deficiencies in the owner's manual at trial.

1968 Consumer Reports Article

Defendant asks the Court to exclude a 1968 Consumer Reports article that contained an evaluation of several bolt-action rifles, including the Remington Model 700, because the article identified a "sample defect" that is separate from the alleged design defect identified by Powell. Dkt. # 65, at 11. Plaintiffs respond that the article is admissible to show that Remington had notice of a possible defect in the Model 700 rifle and that members of the gun-owning community viewed the rifle as "potentially dangerous four decades ago." Dkt. # 74, at 9. At this time, neither party has submitted a copy of the article and the Court will not conclusively rule on its admissibility. However, the Court will likely exclude the article if it is being offered only to show that an older model may have had a design defect that is not at issue in this case or that unspecified persons viewed the rifle as "potentially dangerous." Plaintiffs would be offering the article only for purposes that are not relevant to their claims, and plaintiffs' proposed uses of the evidence would be unfairly prejudicial to defendant. Defendant's request to exclude the 1968 Consumer Reports Article (Dkt. # 65, at 11) is preliminarily denied.

Pre-1982 Bolt Lock Rifle

Defendant seeks the exclusion of evidence concerning a "bolt-lock" feature that was part of an earlier model of the Model 700 rifle, because the subject rifle was manufactured in 1996 and it does not have a "bolt-lock" feature. Dkt. # 65, at 13. Plaintiffs generally do not oppose this argument, but they ask leave to address this issue if defense counsel mentions the "bolt-lock" feature

13

at trial. Dkt. # 74, at 10. Based on defendant's motion, there is basis to believe that defendant would raise this issue at trial, and the motion in limine should be granted on this issue.

Model 710 Development Test Results

Defendant asks the Court to exclude evidence that two Model 710 rifles fired without a trigger pull during Design Acceptance Testing. Dkt. # 65, at 15-16. Plaintiffs do not oppose defendant's request, and defendant's request to exclude evidence of the Model 710 testing is granted. Dkt. # 74, at 10.

Failure to Regain Issue

Defendant seeks to prevent Powell from testifying about the "failure to regain" that can occur when a gun user intentionally and partially pulls the trigger, because the evidence is clear in this case that no one claims to have partially pulled the trigger before the shooting. Dkt. # 65. Plaintiffs respond that this is a known cause of an accidental discharge of a Model 700 rifle, and Powell should be permitted to testify about this issue. The Court has addressed this issue in a prior opinion and order, and has found that Powell may not testify about the effect of a partial trigger pull. Dkt. # 90, at 10. Defendant's request to exclude evidence of the "failure to regain" is granted.

**D. Defendant's Motion to Control the Order of Proof and Exclude *in Limine* General Evidentiary Matters, and Brief in Support (Dkt. # 63)**

Request to Control Order of Proof

Defendant asks the Court to require plaintiffs to offer "evidence of the facts and circumstances of the shooting and the condition of the rifle" before presenting Powell's expert testimony, because this will assist the Court in determining if Powell's expert testimony is admissible. Dkt. # 63, at 2. Plaintiffs respond that they "will lay a proper factual foundation prior to [Powell's] testimony and therefore, such an order is unnecessary." Dkt. # 73, at 1.

Under Fed. R. Evid. 611, a district court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." "It is axiomatic that district courts enjoy wide latitude in matters concerning the ordering of proof and the presentation of evidence." Morales Feliciano v. Rullan, 378 F.3d 42, 57 (1st Cir. 2004). A district judge is more than a "mere moderator or umpire," and the Court's function "is to set the tone of the proceedings and exercise sufficient control to insure that the trial will be an orderly one in which the jury will have the evidence clearly presented." Anderson v. Great Lakes Dredge & Dock Co., 509 F.2d 1119, 1131 (2d Cir. 1974).

The Court has reviewed defendant's request for the Court to control the order of proof and the Court agrees that plaintiffs should be required to put on evidence of the facts of the shooting before Powell is permitted to testify. In a prior opinion and order (Dkt. # 90), the Court noted that witnesses had given conflicting accounts of the shooting and that it was unclear what version of events Powell relied on to reach his causation opinion. Dkt. # 90, at 7. The Court believes that any eyewitnesses (T.G., K.G., S.H., and/or C.M.) who are going to testify should testify before Powell so that defendant has an opportunity to cross-examine plaintiffs' causation expert after the jury has heard the conflicting accounts of the shooting. Defendant's motion in limine (Dkt. # 63) is preliminarily granted as to this issue.

Evidence Concerning the Consumer Product Safety Commission (CPSC)

Defendant asks the Court to exclude evidence that the CPSC does not hear consumer complaints concerning allegedly defective firearms, because this evidence would be irrelevant and would confuse the jury. Plaintiffs respond that they have not decided if they will make any

15

reference to the CPSC, but they argue that this issue could become relevant if defendant suggests that there were no consumer complaints about Model 700 rifle. The parties agree that consumer complaints about firearms are outside the jurisdiction of the CPSC. Dkt. # 73, at 2.

After reviewing defendant's motion and plaintiff's response, the Court finds no reason why either party would have any need to mention that the CPSC lacks jurisdiction over consumer complaints concerning firearms. Evidence of consumer complaints concerning the same rifle could be relevant to establish notice, but the lack of complaints to an entity that is not empowered to hear such complaints is irrelevant. Plaintiffs suggest that jurors could wonder why there were no consumer complaints and that it might be necessary to inform the jury that the CPSC could not hear complaints about firearms. However, this case is not about whether other consumers have alleged that the Model 700 was defective but, instead, plaintiffs must show that the specific rifle that caused their injury was defective and unreasonably dangerous. The lack of consumer complaints to the CPSC would not tend to prove any relevant fact for either party and, at most, plaintiffs would be using this evidence to unfairly prejudice defendant by showing firearm manufacturers are exempt from the jurisdiction of the CPSC. Unless defendant open the door to this evidence by mentioning a lack of consumer complaints, neither party may refer to the CPSC or the lack of consumer complaints concerning the Model 700 rifle and this aspect of defendant's motion in limine (Dkt. # 63) is granted.

<u>References to Remington in Television, News, and Internet Reports</u>

Defendant seeks to exclude references to "written and televised news reports and programs and/or internet sites regarding Remington bolt-action rifles," and the key news report referenced by defendant is a television program called "Remington under Fire." Defendant argues that

16

"Remington Under Fire" was an hour-long program shown on CNBC, and it contains numerous hearsay statements about alleged defects in the Model 700 rifle. Dkt. # 63, at 3-4. Plaintiffs respond that "Remington Under Fire" is "essentially the grand customer complaint" and it would not be offered to prove that the Model 700 rifle is defective. Dkt. # 73, at 4.

Plaintiff has provided copies of "Remington Under Fire" and Remington's video response, and the Court has reviewed the videos. The Court finds that "Remington Under Fire" and Remington's response video clearly constitute impermissible hearsay, and neither party will be permitted to show the videos at trial. The Court has reviewed "Remington Under Fire" and it contains hearsay statements about alleged product defects that are not at issue in this case. While plaintiffs claim that the program is "essentially the grand customer complaint," the Court finds that defendant would be prejudiced by showing any portion of the program, even if a limiting instruction were given to the jury on the permissible use (if any) for showing the program during trial. Plaintiffs would primarily be offering "Remington Under Fire" to show that the Model 700 rifle was defective, rather than to show that Remington had received customer complaints about the rifle or to support its claim about the specific product defect identified by Powell. This would also lead to a mini-trial about the veracity of the allegations contained in the program, and the Court would be required to allow Remington to show its rebuttal video to the CNBC program. There is also a substantial risk of jury confusion if the jury were to here about customer complaints concerning incidents involving the Model 700 rifle without a showing by plaintiffs that the incidents mentioned in "Remington Under Fire" were substantially similar to the shooting in this case. If plaintiffs are seeking to inform the jury that Remington received complaints about the Model 700 rifle, plaintiffs acknowledge that they have documents generated by Remington showing that complaints were

17

made, and it is possible that Remington would be willing to stipulate that it received complaints about the rifle. However, plaintiffs shall not be permitted to show "Remington Under Fire" during trial, and defendant's request to exclude this evidence is granted.

References to the Wealth, Size, and Resources of Remington

Defendant asks the Court to exclude evidence of Remington's size or wealth until the jury has determined that plaintiffs should be awarded actual or compensatory damages. Dkt. # 63, at 5. Plaintiffs state that they do not intend to introduce this type of evidence during the liability phase of trial. Dkt. # 87, at 5. The parties are advised the Court will follow its standard procedure for cases involving the possibility of punitive damages, and the trial will be divided into two phases. In the first phase, the jury will consider defendant's liability, plaintiffs' compensatory damages, and whether defendant acted with requisite level of reckless disregard or malice to be held liable for punitive damages. The jury will consider evidence concerning the amount of punitive damages in a second phase of trial only if the jury finds by clear and convincing evidence that defendant can be held liable for punitive damages under OKLA. STAT. tit. 23, § 9.1. Remington's request to exclude evidence of its size or wealth is granted as to the liability phase.

Testimony Concerning Remington Documents and
the State of Mind of Remington Employees

Remington asks the Court to prevent plaintiffs' expert, Powell, from "offering his personal opinions as to the 'meaning' of Remington documents or the state of mind of Remington and its employees." Dkt. # 87, at 5. Plaintiffs respond that it intends to ask Powell if he has reviewed Remington documents and if Remington had notice of the alleged defect in the Model 700 rifle, and this type of testimony would be relevant. Dkt. # 73, at 6.

The Court has reviewed Remington's motion in limine and it does not appear that Remington is arguing that the documents are inherently inadmissible. Instead, Remington is seeking to prevent Powell from offering opinions about the state of mind of Remington employees and possibly Remington's alleged lack of action in response to consumer complaints. Dkt. # 63, at 7. Plaintiffs are correct that Powell can testify that he reviewed internal Remington documents and that it will ultimately be up to the jury to determine the meaning of the documents. Dkt. # 73, at 6. However, Powell cannot speculate as to the state of mind of Remington's employees and he cannot suggest reasons why Remington might not have taken action after receiving customer complaints. See DePaepe v. General Motors Corp., 141 F.3d 715, 720 (7th Cir. 1998). Powell may be permitted to testify that he reviewed Remington documents, but plaintiffs must lay an appropriate foundation before admitting evidence of customer complaints. In particular, plaintiffs must make a preliminary showing that the complaints concern the same rifle and same alleged defect. If plaintiffs offer documents to show that Remington had notice of a defect, Remington may request a limiting instruction to clarify that the documents are being admitted only to show notice of a potential defect and that the jury is not to assume that any consumer complaints were accurate. See Worsham , 734 F.2d at 686. Defendant's request to prevent Powell from speculating about the state of mind of Remington's employees is granted, but this does not preclude plaintiffs from offering Remington documents as evidence that Remington had notice of customer complaints about the Model 700 rifle if plaintiffs can establish that the complaints concern the same defect at issue in this case.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Control the Order of Proof and Exclude *in Limine* General Evidentiary Matters, and Brief in Support (Dkt. # 63) is **granted**. Plaintiffs' Motion in Limine (Dkt. # 64) is **granted in part** and **denied in part**. Defendant's Motion

*in Limine* to Exclude Non-Causally Related Defects and Conditions and Other Inadmissible Matters (Dkt. # 65) is **granted in part** and **denied in part**. Defendant's Motion *in Limine* to Exclude Evidence of Other Occurrences, Lawsuits, Settlements, and Verdicts, and Brief in Support (Dkt. # 66) is preliminarily **denied**, but plaintiffs are advised that they may use evidence of other similar incidents or customer complaints only after laying an appropriate foundation.

**IT IS FURTHER ORDERED** that, no later than **June 13, 2014**, the parties shall individually contact Magistrate Judge T. Lane Wilson telephonically to advise him whether they believe a supplemental settlement conference would be helpful in resolving this matter.

**DATED** this 10th day of June, 2014.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE